# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DONALD GILLESPIE

     Plaintiff,

v.                                            Case No.:


CHETH PLAUGHTER,

and,

DONNIE L. MORRIS,

and,

SHERIFF T.K. WATERS,[1]
CITY OF JACKSONVILLE, FLORIDA,
In his official capacity,

and,

SHERIFF ROBERT A. HARDWICK,
ST. JOHNS COUNTY, FLORIDA
In his Official Capacity as

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

[1] The acts herein came under the tenure of Sheriff Mike Williams and the current Sheriff of the City of Jacksonville is T.K. Waters.

**COMES NOW** the Plaintiff, Donald Gillespie (the "Plaintiff"), by and through his undersigned counsel, and by way of this Complaint seeks relief against the above-named Defendants as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Donald Gillespie, is an adult male who is a citizen of and resides in the custody of the State of Florida. At all times relevant herein, Plaintiff was a resident within the Middle District of Florida, Jacksonville Division.

2. Defendant Cheth Plaughter (#64367) was at all times relevant to this case a police officer with the Jacksonville Sheriff's Office ("JSO"). Defendant Plaughter is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law. Defendant Plaughter is being sued herein in his individual capacity.

3. Defendant Donnie L. Morris (#5799) was at all times relevant to this case a police officer with the Jacksonville Sheriff's Office. Defendant Morris is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law. Defendant Morris is being sued herein in his individual capacity.

4. Defendant Sheriff T.K. Waters ("Sheriff"), by and through the acts and omissions of his predecessor Mike Williams ("Williams"), was at all times relevant to this case the Sheriff of the City of Jacksonville and is being sued in his

official capacity.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law. Defendant Sheriff at all times relevant to this case supervised officers of the Jacksonville Sheriff's Office.  In addition, at all times relevant herein Defendant Sheriff is responsible for the training, supervision, discipline, control and conduct of officers of the Jacksonville Sheriff's Office.

5.     Defendant Sheriff Robert A. Hardwick ("Sheriff Hardwick") was at all times relevant to this case the Sheriff of St. Johns County, Florida and is being sued in his official capacity.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law. Defendant Sheriff  at all times relevant to this case supervised officers of the St. Johns County Sheriff's Office acting under the color of law.  In addition, at all times relevant herein Defendant Sheriff Hardwick was responsible for the training, supervision, discipline, control and conduct of officers of the St. Johns County Sheriff's Office ("SJCSO").

6.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §1983.

7.     The acts complained of herein occurred in Duval County, Florida. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

3

## FACTUAL BACKGROUND

8.      On or about November 27, 2019, JSO officers were pursing Plaintiff Gillespie after he exited his car and went into the woods to the west of Blanding Blvd. near 4556 Blanding Blvd., Jacksonville, Florida.

9.      Around 6:05pm on November 27, 2019, Defendant Plaughter utilized a canine member of the JSO K9 unit ("Huk"), and responded to the area to assist in the search for Plaintiff Gillespie.

10.     Defendant Plaughter then deployed his canine, Huk, to search for Plaintiff Gillespie.

11.     Defendant Plaughter did not have a body camera.

12.     Following Defendant Plaughter's deployment of Huk, the dog led Defendant Plaughter to a creek where Plaintiff Gillespie was located.

13.     Plaintiff Gillespie was then bit by Huk on his right arm for approximately one (1) minute while the dog Huk was under the control of Defendant Plaughter.

14.     Defendant Plaughter thereafter manually engaged a release of the dog Huk from Plaintiff Gillespie's arm, causing further damage to Plaintiff Gillespie's body. At that time, however, Defendant Plaughter could have ordered a simple release command of the dog Huk from its grasp on Plaintiff Gillespie but

4

intentionally did not issue such command. Because of Defendant Plaughter's engagement with the dog Huk and its release of Plaintiff Gillespie's body, Plaintiff Gillespie suffered severe and permanent injuries.

15. Following the release of the dog Huk from Plaintiff Gillespie's body, Defendant Morris approached Plaintiff Gillespie, who was compliant and Defendant Morris asked other JSO officers on the scene that any lighting in the area of Plaintiff Gillespie be shut off.

16. Thereafter, Defendant Morris, without any cause, forcefully struck Plaintiff Gillespie in the face on more than on occasion and then ordered him to put his hands behind his back.

17. Plaintiff Gillespie was lying flat on his back for the duration of this time he was struck by Defendant Morris in the presence of Defendant Plaughter. At no time did Defendant Plaughter seek to stop the attack of Plaintiff Gillespie by Defendant Morris.

18. Plaintiff Gillespie then laid on his back moaning in pain and complaining about his injuries. Despite this notification by Plaintiff Gillespie, at no point following the attack did Defendants Plaughter or Morris as well as officers on the scene call for professional medical help.

19. Approximately 10 minutes after the attack on Plaintiff Gillespie, an

officer on the scene began to look at Plaintiff Gillespie's arm injuries and applied a bandage.

20.    Plaintiff Gillespie, however, continued to complain about the pain and make moaning noises in the interim. Upon information and belief, neither the Defendants Plaughter nor Morris or any JSO officers on the scene called for medical attention for Plaintiff Gillespie.

21.    Instead of providing Plaintiff Gillespie medical care, Plaintiff was taken by JSO officers to the City of Jacksonville Pretrial Detention Center to book him. The next day, on November 28, 2019, Plaintiff Gillespie was finally taken to a medical facility for medical care.

22.    The attack on Plaintiff Gillespie by JSO officers was an improper use of force and was consistent with the policy and practices of the management of the Jacksonville Sheriff's Office, including Defendant Sheriff.

23.    Plaintiff Gillespie has suffered, and continues to suffer injuries, including bodily injury and nerve damage as well as regular pain and suffering and psychological injury as a result of the events set forth herein.

24.    Defendant Plaughter exercised unnecessary and excessive force upon Plaintiff Gillespie in violation of the U.S. Constitution by his use of the dog Huk and the method of his release of the dog from Plaintiff Gillespie's body.

25. Defendant Morris committed an unconstitutional act of violently Striking Plaintiff Gillespie's face without cause.

26. At all times relevant herein, Plaintiff Gillespie did not commit any act of violence towards any of the Defendants or anyone else, nor did he threaten any Defendants or anyone else physically in any way.

27. Defendants Plaughter and Morris as well as other JSO officers were in close proximity to the unlawful treatment of Plaintiff Gillespie as set forth herein, but failed to take any reasonable steps to protect Plaintiff Gillespie from the use of excessive force by the Defendants Plaughter or Morris.

28. Plaintiff Gillespie suffered severe physical and psychological injuries as a result of the treatment by Defendants, including but not limited to: facial contusions and lacerations, nerve damage, anxiety, depression and other injuries.

29. On or about November 29, 2019, Plaintiff Gillespie was transferred from the City of Jacksonville Pre-Trial Detention Center to the St. Johns County Detention Center.

30. Once Plaintiff Gillespie arrived at the St. Johns County Detention Center, he informed correctional officers of his injuries and his need for medical care, but he was denied adequate medical treatment.

31. All conditions precedent to this action, if any, have been met

for each claim brought in this Complaint, and each such claim is timely brought.

## COUNT ONE
### Violation of Fourth Amendment Protections
### Pursuant to 42 U.S.C. §1983-Excessive Force
### (Defendants Plaughter, Morris and Sheriff Waters)

32.     Plaintiff incorporates by reference herein and reallege the allegations in Paragraphs 1 through 31 above as though set forth fully herein.

33.     Plaintiff Gillespie had excessive force unconstitutionally used against him by Defendants Plaughter and Morris by, including but not limited to: the deployment of the dog Huk to bite Plaintiff Gillespie, the manual release of the dog tearing into the body of Plaintiff Gillespie, the beating of Plaintiff Gillespie by Defendant Morris and the subjecting Plaintiff Gillespie to physical harm and abuse.

34.     The use of force against Plaintiff Gillespie by Defendants Plaughter and Morris, as set forth herein, was excessive, unreasonable, and in violation of the Fourth Amendment of the United States Constitution.

35.     Defendants Plaughter, Morris and other JSO officers were in close proximity to the Plaintiff Gillespie during the use of excessive and unreasonable force by the Defendants Plaughter and Morris, and each Defendant as well as other JSO officer failed to take any reasonable steps to protect Plaintiff Gillespie from the use of excessive force.

36.     The act and omissions of the Defendants Plaughter and Morris herein

were willful, wanton, reckless, intentional, conscious and malicious, and in deliberate disregard of Plaintiff Gillespie's Constitutional rights.

37.    The policies, practices and customs of Defendant Sheriff and the Jacksonville Sheriff's Office allowed JSO police officers to physically abuse and use excessive force without fear that other officers will stop and/or report such abuse. Defendant Sheriff and the Jacksonville Sheriff's Office also failed to train JSO officers how to prevent such acts of violence by other officers as well as what actions should be taken if an officer is a witness to an attack by another officer.  Defendant Sheriff and the Jacksonville Sheriff's Office have a Constitutional duty to citizens, including Plaintiff Gillespie, to conform to the requirements of the Constitution of the United States regarding the use of force during a Constitutional assembly of citizens.

38.    Specifically, Defendant Sheriff and JSO have failed to discipline JSO officers for engaging in excessive force.  Since former Sheriff Williams became Sheriff, 497 incidents of excessive force have been reported by civilians.  Of these, only 39% of officers received discipline.  Further, Defendant Sheriff and JSO have failed to train officers on the constitutional limits on the use of force.  JSO officers receive approximately 19 weeks of training, only 4 hours of which covers the constitutional limits on the use of force.

39.     As a direct and proximate result of the actions and omissions of Defendants Plaughter, Morris and Sheriff, Plaintiff Gillespie has suffered, and will continue to suffer, physical injuries as well as emotional distress, including personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, economic, compensatory, consequential and punitive damages against the individual Defendants.

## COUNT TWO
### Battery
### (Defendants Plaughter and Morris)

40.     Plaintiff incorporates by reference herein and reallege the allegations in Paragraphs 1 through 31 above as though set forth fully herein.

41.     Defendant Plaughter intentionally used excessive force against Plaintiff Gillespie by, including but not limited to:  the deployment of the dog Huk to bite Plaintiff Gillespie, the manual release of the dog tearing into the body of Plaintiff Gillespie, and subjecting Plaintiff Gillespie to physical harm and abuse.

42.     Defendant Morris intentionally used excessive force against Plaintiff Gillespie by, including but not limited to: the beating of Plaintiff Gillespie by Defendant Morris and subjecting Plaintiff Gillespie to physical harm and abuse.

43.     The act and omissions of Defendants Plaughter and Morris herein were

10

willful, wanton, reckless, intentional, conscious and malicious, and in deliberate disregard of Plaintiff Gillespie's rights.

44.    As a direct and proximate result of actions and omissions of Defendants Plaughter and Morris, Plaintiff Gillespie has suffered, and will continue to suffer, physical injuries as well as emotional distress, including personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, economic, compensatory, consequential and punitive damages against said Defendants.

## COUNT THREE
### Negligence
### (Defendant Sheriff)

45.    Plaintiff incorporates by reference herein and reallege the allegations in Paragraphs 1 through 31 above as though set forth fully herein.

46.    Plaintiff Gillespie was injured as a result of a wrongful and unjustified conduct of JSO officers, including Defendants Plaughter and Morris, under the direction and control of Defendant Sheriff.

47.    Defendant Sheriff had a duty to Plaintiff Gillespie to ensure the proper training, conduct and actions of JSO and the officers under Defendant Sheriff's direction and control. Defendant Sheriff, however, breached his duty to Plaintiff

Gillespie by allowing abusive and wrongful conduct of Defendants Plaughter and Morris as well as other JSO officers under Defendant Sheriff's direction.

48.     Plaintiff Gillespie was seriously injured and had his rights violated due to the negligence of Defendant Sheriff.

49.     As a direct and proximate result of Defendant Sheriff's actions, Plaintiff Gillespie has suffered, and will continue to suffer, damages.

## COUNT FOUR
### Negligence
### (Defendant Sheriff Robert A. Hardwick)

50.     Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 through 31 above as though set forth fully herein.

51.     Plaintiff was injured as a result of a wrongful and unjustified conduct of SJCSO deputies under the direction and control of Defendant Sheriff Hardwick by the lack of medical care to Plaintiff Gillespie.

52.     Defendant Sheriff Hardwick had a duty to Plaintiff to ensure the proper training, conduct and actions of SJCSO and the deputies under Defendant Sheriff Hardwick's direction and control. Defendant Sheriff Hardwick, however, breached his duty to Plaintiff Gillespie by the acts and omissions of SJCSO and the deputies under Defendant Sheriff Hardwick's direction at the St. Johns County Detention Facility.

53.     As a direct and proximate result of Defendant Sheriff Hardwick's actions, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT FIVE
**Deliberate Indifference to Serious Medical Needs
In Violation of 42 U.S.C. § 1983
(Defendant Sheriff Hardwick)**

54.     Plaintiff incorporates and re-alleges by reference herein the allegations set forth in paragraphs 1–31 above as if fully set forth herein.

55.      The actions of the Defendant Sheriff Hardwick indicates a deliberate indifference to the serious medical needs of Plaintiff Gillespie.

56.     Plaintiff Gillespie was suffering visible injury upon his booking at the St. Johns County Detention Center, and his injuries were known and made aware to SJCSO deputies under the direction and control of Defendant Sheriff Hardwick.

57.     Defendant Sheriff Hardwick had a duty to Plaintiff to ensure the proper training, conduct and actions of SJCSO and the deputies under Defendant Sheriff Hardwick's direction and control. Defendant Sheriff Hardwick failed to properly train officers the St. Johns County Detention Facility to respond to and address the visible injuries of persons being housed at the St. Johns County Detention Center.

58.      Neither Sheriff Hardwick nor any SJCSO deputies provided adequate medical care to Plaintiff Gillespie despite knowing the need for the same.  Plaintiff, therefore, remained in pain and severe discomfort.  Instead, Defendant Sheriff

13

Hardwick should have trained his deputies to promptly call medical services to advise of Plaintiff's medical emergency and otherwise facilitate the same, but did not. The delay in contacting medical providers and lack of care of Plaintiff was intentional as Plaintiff repeatedly made known his need for medical care.

59. Defendant Sheriff Hardwick knew, or should have known, of Plaintiff's serious medical needs and with deliberate indifference to such serious medical needs, acted or failed to act in such manner as to prevent Plaintiff Gillespie from obtaining needed medical treatment and care and/or to prevent needed medical treatment and care from reaching the Plaintiff.

60. The actions and/or omissions of the Defendant Sheriff Hardwick in being deliberately indifferent to the serious medical needs of Plaintiff Gillespie was a direct and proximate cause of damage to Plaintiff's health and well-being.

61. The acts and omissions of Defendant Sheriff Hardwick in this case deprived Plaintiff Gillespie of his clearly established rights under the Eighth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

62. As a direct and proximate result of Defendant Sheriff Hardwick's Actions and omissions, Plaintiff Gillespie has suffered and will continue to suffer damages, including death, physical injuries, emotional distress, personal humiliation, mental anguish and embarrassment justifying an award including, but

not limited to, economic, compensatory, consequential damages against Defendant Sheriff Hardwick.

**WHEREFORE**, Plaintiff Donald Gillespie respectfully request that this Honorable Court grant the following relief:

(1)    Enter judgment on behalf of Plaintiff against Defendants on all Counts herein as alleged;

(2)    Award damages for economic damages resulting from the physical injuries suffered by Plaintiff Gillespie in amounts to be determined by the jury;

(3)    Award Plaintiff Gillespie compensatory damages against Defendants in amounts to be determined by the jury;

(4)    Award punitive damages against certain individual Defendants as set forth herein;

(5)    Award Plaintiff Gillespie's reasonable attorneys' fees, court costs, expenses, pre-judgment interest, and post-judgment interest as allowed herein; and,

(6)    Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Gillespie hereby demand a jury trial on all claims in his Complaint.

15

Dated:  November 22, 2023

Respectfully submitted,

HENRICHSEN LAW GROUP
301 W. Bay Street, Suite 1400
Jacksonville, Florida 32202
(904) 381-8183
Fax: (904) 212-2800

*/s/ Neil L. Henrichsen*
Neil L. Henrichsen
Fla. Bar No.: 0111503
nhenrichsen@hslawyers.com
service@hslawyers.com

Attorneys for Plaintiff Gillespie

16